J. J. CALDWELL, Appellant, v. CATHERINE FINCH.

**Mental Incapacity:** EVIDENCE. Conflicting evidence reviewed and held to warrant a finding that a husband was of sound mind when he made a deed of trust to his mother-in-law for the benefit of his wife.

*Appeal from Johnson District Court.*—HON. M. J. WADE, Judge.

FRIDAY, JANUARY 24, 1896.

Action in equity to set aside certain deeds. Decree for defendant.   Plaintiff appeals.—*Affirmed.*

*Remley & Ney* for appellant.

*Rickel & Crocker* for appellee.

Kinne, J.—I.   The undisputed facts in this case are:   That on January 20, 1888, plaintiff was the owner of the land now in controversy, and that the

same constituted the homestead of the plaintiff and his wife; that at and prior to said date plaintiff was sick; that, during his said sickness, he and his wife executed a deed of the land to one James Douglass, who, at the same time, executed his bond to plaintiff, agreeing within one year to convey said land to plaintiff's wife; that on August 22, 1888, said Douglass did convey the land to plaintiff's wife, who was also a sister of Douglass; that plaintiff's said wife died in 1892; that the defendant is the mother of plaintiff's deceased wife. Plaintiff recovered, and brings this action to set aside the deed of himself and wife to Douglass, and the deed of Douglass to his wife, claiming that when he and his wife executed the deed to Douglass he was so ill as to be incapable of making the deed, and that he never consented to the same, and asks to have the title to the land quieted in him. Defendant insists that the deed was made in order to repay money which had, before that time, been advanced by the wife to her husband; that it was made, at his instance, to Douglass, who, by the terms of the bond, was, within a year, to convey the land to the wife, which he did; that plaintiff, when he made the deed, was in full possession of all his faculties; that he made no objection to Douglass deeding the land to the wife, but ratified and confirmed said act; that after the death of his said wife, and with a full knowledge of all of the facts, plaintiff delivered the original deeds and the bond to Douglass.

II. The controlling question in this case is as to whether or not, at the time plaintiff and his wife executed the deed, he was possessed of sufficient mental capacity to make a conveyance which would be binding upon him. Other questions are argued, but, under the view we have taken, we need not give them special consideration. The evidence touching the plaintiff's physical and mental condition at the

time he executed the deed is conflicting. We shall not discuss it at length. On the one hand, plaintiff himself testifies that he had no knowledge of making the deed, and first knew of it when informed of what he had done when recovering from his illness. A physician testified that plaintiff was suffering from a bilious attack, involving the stomach and liver, with congestion accompanying it; also complicated with melancholia; was cranky, and imagining something which did not occur. He says, on the day on which the deed was executed, plaintiff's physical condition was much improved, but he had not changed mentally; that he was talking about religion, and dying, or worried about his stock getting no attention. He swears he does not think plaintiff was of sufficient soundness of mind to transact business on January 20, 1888. Another witness, who was waiting on plaintiff before and after the deed was made, but who was not present at the time it was executed, testified, in effect, that he was weak, could not talk much, and that he was not in his right mind. On the other hand, Douglass testified to having known plaintiff for twenty-nine years; that he conversed with him often during his illness, and discovered nothing wrong with him, mentally; that he was sent for the day the deed was executed; that plaintiff told him he wanted to make the deed, and described the property, and said he had sent for a justice; that plaintiff raised up in bed and signed the deed without assistance; that he told the justice it was his voluntary act; that he gave, as his reason for wanting to make the deed, that it was no more than right, as his wife's money had gone into the property. Another witness testified that, near this time, she visited plaintiff. He asked her about a meeting at the church, called her by name, and appeared to be in his right mind. John Douglass, about eight days before the deed was made, saw plaintiff, and frequently

conversed with him, and he answered his questions, and gave him directions about caring for his stock. Still another witness saw and talked with him on the day upon which the deed was executed, and detailed facts from which she testified to his mental soundness. One Griswold, a witness who had known plaintiff for ten or more years, worked for him eighteen or twenty days during his illness. He says he went into his room, perhaps, every other day to get instructions as to the way he wanted the stock attended to; that he told him how to feed the cattle; that the next day after the deed was made he saw plaintiff, and he gave him directions about doing some work. Dr. Ristine testified to his capacity for transacting business the day after the deed was made, and he discovered no impairment of his mind. There was other evidence as to plaintiff's sound mental condition. It must be understood that we have not attempted to set out but a few of the facts testified to on either side. We think, however, that the preponderance of the testimony clearly shows that plaintiff was in such mental condition at the time he executed the deed as to fully comprehend the effect of his acts, and that it was his voluntary act, without fraud on the part of any one. His subsequent conduct, in waiting about four years before attacking the conveyance, and other acts and conversations of his, strongly tend to show that the claimed want of mental capacity at the time he executed the deed was an afterthought. We are fully satisfied with the result reached by the district court. —*Affirmed.*